UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

GRANT DAVIS,

        Petitioner,

       v.                                                   Case No. 10-C-0524

JUDY P. SMITH,

        Respondent.

## ORDER SETTING EVIDENTIARY HEARING

This case comes before the court on Grant Davis's habeas petition challenging the Wisconsin Division of Hearing and Appeal's June 27, 2006, order revoking his parole, imposing a two-year period of incarceration, and forfeiting his ten years of good time credit. Davis, who is appearing through appointed counsel, concedes that he did not file the pending habeas petition within the one-year time limit but argues that the time is subject to equitable tolling. Additionally, respondent is seeking dismissal based on procedural default notwithstanding Davis's assertion that he exhausted his State remedies "to the best of his abilities." Both of these issues need to be resolved before the court can address the merits. Davis has requested an evidentiary hearing to further supplement the record with respect to his equitable tolling and procedural default arguments, as well as to demonstrate that counsel was ineffective in his representation through the revocation proceedings. For the reasons set forth below, the court will conduct a hearing.

## FACTS

This case dates back to 1983 and 1984 when two sexual assaults committed by Davis resulted in a combined 40-year sentence. (State Ex. B at 32-2, 32-3.) A 1993

judgment of conviction in Racine County Circuit Court for battery by prisoners resulted in an additional 10-year sentence consecutive to the 40 years. (State Ex. D.) However, Davis reached his mandatory parole date on November 22, 2005. (State Ex. F at p. 2.)

On the day of his release, the Wisconsin Department of Corrections reported that Davis refused to attend Sex Offender Treatment and to account for the details of the offense underlying his conviction and decided to recommend revocation. (State Ex. F.) A revocation hearing was held on December 27, 2005, before an Administrative Law Judge with Davis's parole agent, the DOC representative, Davis's attorney, and Davis. All parties agreed to an Alternative to Revocation (ATR.), and the parole agent requested that Davis admit on the record his conduct regarding one of the past assaults.

Davis was released to the ATR Sex Offender Treatment Group on March 29, 2006. (State Ex. F.) However, on April 27, 2006, Davis's parole agent completed a "violation/revocation summary" recommending revocation of Davis based on the November 22, 2005, violation, his termination from the sex offender treatment program in March of 2006, and Davis's refusal to give a statement to the agent following his termination from the program. (State Ex. F.)

The final revocation hearing was held on May 11, 2006, with the agent, Davis and his attorney, Jon Spansail, present. (State Ex. Y.) The parole agent testified regarding the events of November 22, 2005, the hearing on December 27, 2005, his observations of Davis in the sex offender treatment group, and Davis's refusal to give a statement. (*Id.* at pp. 8-15.)

While testifying, Davis explained the events of March 27, 2006, and that the group facilitator told him to leave and to come back with a better story or "don't come back."

Davis testified that he has a bad memory "to a certain extent" and that he didn't sign a statement because he didn't trust what the parole agent had written and the agent didn't read anything to him. Also, according to Davis, he never refused to go to the sex offender group on November 22, 2005. Davis explained that he has mental health issues and was diagnosed with schizophrenia, and had previously been on a lot of medications. (*Id.* at pp. 21-25.) He further testified:

> Sir. I'm – I'm –I'm a man that took a whippin'. I'm payin' – I've paid a lots. 23 years now I'm still tryin' to do the best I can. And I told the jury all that when he told me cut me loose I would go to group. I didn't miss a day no more than when I got sick and the day they told me to come out of that building, sir. I was there all – always was there from 20 to 30 minutes ahead of time, sir. Now my memory's not sharp as – I'm 61 years old. I'm tryin' sir, best of my ability. I ain't got nobody sir. If I - If I didn't have the church and goin' to group I might well be back in prison like I made the statement on that, sir. That's my side of it.

(*Id.* at p. 25.)

After hearing the testimony, and the recordings from the December 27, 2005, and the May 26, 2006, telephonic hearings, the Division revoked Davis's parole by an order and warrant dated June 27, 2006. (State Ex. N.)

Two years later, Davis requested reconsideration of the June 27 revocation order in a letter dated September 19, 2008. Davis described himself as illiterate and schizophrenic, and explained that he did not understand his due process rights. (State Ex. O.) The Administrative Law Judge, who issued the decision, denied Davis's request in a letter dated October 10, 2008, explaining that he saw nothing that would cause him to reopen the case. He also explained to Davis that the only telephonic status conference that Davis did not participate in was for the sole purpose of allowing Davis's attorney to listen to Davis's testimony of a prior hearing. (*Id.*)

3

In a letter dated March 2, 2009, Davis asked the administrator of the Division of Hearings and Appeals to acknowledge that Davis's attorney, Jon Spansail, was ineffective during the revocation proceedings. Specifically, Davis asserted that Attorney Spansail failed to: (1) seek a hearing on an alternative to revocation; (2) request a preliminary hearing; (3) provide a full and fair final revocation hearing; (4) request a forfeiture of good time hearing; and (5) seek judicial review of the decision by a writ of certiorari. The letter was written by another inmate because Davis is "low functioning illiterate and did not know these issues until he talk to an inmate who is writing for him to have a new revocation hearing . . . ." (State Ex. Q.)

The administrator construed the letter as a request for reconsideration of the decision based upon newly discovered evidence and denied the same. (State Ex. R.) Davis's primary argument – that he did not receive a preliminary hearing – was denied because he had not presented newly discovered evidence and he was present for the full, final revocation hearing. The telephonic status conference prior to the revocation hearing was for the sole purpose of allowing Davis's counsel to listen to a prior recording.

Then, on June 3, 2009, Davis asked the Wisconsin Supreme Court for a writ of habeas corpus. (State Ex. T.) In his petition, he alleged that counsel was ineffective in failing to (1) conduct a preliminary hearing regarding the parole revocation; (2) provide a full and fair final revocation hearing; (3) request a hearing concerning possible forfeiture of his good time; (4) seek a hearing for consideration of an alternative to revocation; and (5) failing to seek judicial review of the revocation decision by petitioning for a writ of certiorari. (State Ex. T.) The Supreme Court ordered Attorney Spansail to respond to the allegations. (State Ex. U.) Attorney Spansail filed an affidavit two weeks later recounting a conversation

4

with Davis around June 21, 2006, regarding the merits of the appeal. Attorney Spansail indicated that he thought many of the arguments lacked merit and that Davis's fellow prisoners may not be his best advisors. According to Attorney Spansail's affidavit, Davis responded that he would file on his own with words to the effect of "I gotta do what I gotta do. I'm done with you. You ain't doing shit for me." (State Ex. V.) Attorney Spansail interpreted this to mean that Davis did not want further representation and concluded that he had been terminated. He did not file an appeal. Davis requested a copy of his file from Attorney Spansail on June 22, 2006. Attorney Spansail averred that the telephonic status conference did not involve additional testimony or evidence and that inmates are usually not produced for such matters. Moreover, Davis was not precluded from presenting an alternative to revocation at the hearing. (*Id.*)

The Supreme Court issued the following order:

A petition for writ of habeas corpus having been filed on behalf of petitioner, Grant Davis, and considered by this court,

IT IS ORDERED that the petition for writ of habeas corpus is denied, ex parte.

(State Ex. W.)

Davis filed his petition for writ of habeas corpus with this court on June 24, 2010. This court ordered him to file an amended petition on the standard form. In his amended petition, Davis again argued that Attorney Spansail was ineffective in failing to (1) request a preliminary hearing, (2) pursue a full and fair final revocation hearing, (3) request a forfeiture of good time hearing, (4) demand Davis's presence at the May 11 and 26 hearings, (5) request an ATR program, and (6) seek judicial review of the parole revocation.

(Doc. 9.)  The state responded that the petition is untimely, Davis procedurally defaulted on the first five claims, that the sixth claim is untimely, and that all claims lack merit.

There is no dispute that Davis's petition is untimely.  Nevertheless, the one-year limitations period is not an inflexible rule requiring dismissal whenever the clock has run.  *Holland v. Florida*, ——U.S. ——, 130 S. Ct. 2549, 2560, 177 L. Ed. 2d 130 (2010) (quoting *Day v. McDonough*, 547 U.S. 198, 208, 126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006)).  The limitations period is subject to equitable tolling where a petitioner demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)).  "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* at 2565 (internal quotation marks and citations omitted).

In this circuit, "equitable tolling of the statute of limitations is such exceptional relief that we have yet to identify a circumstance that justifies equitable tolling in the collateral relief context." *Nolan v. United States*, 358 F.3d 480, 484 (7th Cir. 2004).  Some courts have held that a mental condition "so severe[ ]" that it "impair[s] [petitioner's] ability ... effectively to pursue legal relief," can be the basis for equitable tolling.  *Riva v. Ficco*, 615 F.3d 35, 40 (1st Cir. 2010); *see Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (same); *McSwain v. Davis*, 287 Fed. Appx. 450, 456 (6th Cir. 2008) (same).  Yet the mere existence of a mental impairment is not, however, grounds for relief.  *Riva*, 615 F.3d at 40.  There must be some causal link between a petitioner's mental illness and his ability seasonably to file for habeas relief.  *Id.*; *see Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir.1996) ("[M]ental illness tolls a statute of limitations only if the illness in fact prevents the

6

sufferer from managing his affairs and thus from understanding his legal rights and acting upon them.") (emphasis original).

Davis argues that he acted with reasonable diligence by twice appealing his parole revocation to the Division of Hearings and Appeals and by filing a petition for writ of habeas corpus with the Wisconsin Supreme Court. Moreover, he points to evidence in the record that he is illiterate, schizophrenic, and possibly low functioning. He also argues that counsel's failure to file an appeal should serve as a basis for equitable tolling.

There is conflicting evidence in the record regarding Davis's diagnoses, ability to function during the relevant period, as well as the conversation between Davis and counsel. Before this court can address procedural default or address the merits of the petition, it must determine whether there is a basis for equitable tolling. A hearing as requested by Davis may be helpful. Therefore,

IT IS ORDERED that Grant Davis's request for an evidentiary hearing is granted.

IT IS FURTHER ORDERED that the parties shall appear for an evidentiary hearing on March 17, 2014, at 2:00 p.m. in Courtroom 222.

Dated at Milwaukee, Wisconsin, this 21st day of February, 2014.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE