UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

GRANT DAVIS,

        Petitioner,

        v.                                      Case No. 10-C-0524

JUDY P. SMITH,

        Respondent.

---

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DISMISSING CASE, AND DENYING CERTIFICATE OF APPEALABILITY

Grant Davis filed the pending habeas petition challenging the Wisconsin Division of Hearing and Appeal's June 8, 2006, order revoking his parole, imposing a two-year period of incarceration in Case No. 91CF00926, a period of ten years on his combined sentence in K-5765 and K-5810, and forfeiture of his good time credit. Twice this court allowed Davis to amend his petition. (Docs. 5 and 8.) Subsequently, the court denied respondent's motion to dismiss, appointed counsel to represent Davis, and conducted an evidentiary hearing to consider the defenses raised by the respondent. (Docs. 26, 46, and 54.) Because respondent stipulated that the doctrine of equitable tolling applies to this case, the hearing focused on Davis's argument that ineffective assistance of counsel provided cause and prejudice for any procedural default on his part. (Docs. 52 and 57.) Although the court heard witness testimony from Dr. Sheryl Dolezal, Attorney Jon Spansail, and Attorney Waring Finke, following the hearing, respondent withdrew her affirmative defense of procedural default and conceded that Davis had satisfied the exhaustion requirement

of 28 U.S.C. § 2254. (Doc. 59.) For the reasons set forth below, Davis's petition will be denied.

Originally, Davis was incarcerated pursuant to judgments of conviction imposed in 1983 and 1984 for two counts of first-degree sexual assault and a 1993 judgment of conviction for one count of battery by a prisoner with a penalty enhancer. (Doc. 32, Exs. B, C, and D.) Following jury trials, Davis was sentenced to two consecutive 20-year terms on the sexual assault convictions and a consecutive 10-year term on the battery charge. (*Id.*) He began serving the 50-year sentence in 1983.

On November 22, 2005, Davis reached his mandatory release dates for those sentences and was placed on parole. That same day he violated a condition of his parole inasmuch as he refused to attend Sex Offender Treatment ("SOT") class. (Doc. 32, Ex. F.) His agent prepared a statement, apparently signed by Davis. That statement reads:

> On 11-22-05, my agent told me that I am required to admit to the details of my conviction offense in sex offender treatment. I told my agent and his cover agent that I am not willing to attend and admit to the details of my conviction defense in sex offender treatment. I am aware that this is a violation of my parole, but I am innocent. I didn't have a fair trial and I'm not going to admit guilt in that group. It's a violation of my constitution rights.

(Doc. 32-7.) A revocation hearing was conducted on December 27, 2005, at which time Davis admitted the offense and expressed a willingness to attend SOT. Davis accepted an alternative to revocation ("ATR") program, and was released on January 18, 2006. (*Id.* at p. 2.)

On April 27, 2006, Davis's agent filed another violation revocation summary and included the following violation statement:

1. On or about 11-22-05, Grant Davis refused to attend Sex Offender Treatment and account for the details of his conviction offense. This behavior is in violation of The Rules of Community Supervision #1 and Standard Sex Offender Rule #4 signed by Grant Davis on 11-22-05.

2. On or about 3-27-06, Grant Davis caused himself to be terminated from Sex Offender Treatment. This behavior is in violation of The Rules of Community Supervision #1 and Standard Sex Offender Rule #4 signed by Grant Davis on 11-22-05.

3. On or about 3-29-06, Grant Davis failed to report true and correct information in response to inquiries made by the agent. This behavior is in violation of The Rules of Community Supervision #1 and #15 signed by Grant Davis on 11-22-05.

(Doc. 32, Ex. F at p. 1, Ex. G.)

In connection with these alleged violations, Davis's agent prepared statements. The first statement, dated March 29, 2006, asserts that Davis caused himself to be terminated from the SOT, and that Davis walked away from the agent stating that he wanted a hearing. Davis wrote "REFUSED" in the signature line. (Doc. 32-7.) A second statement signed by Davis on March 30, 2006, states:

> The reason I was terminated from group is because on 3/27/06 I was in group with Joe and he was grilling a guy about how many times he was seeing prostitutes. He was coming up for a polygraph test. Joe said some words to my agent and then Joe started drilling Rogers the white dude. They discussed his getting locked up if he did not find a job. They kept drilling him and said well Grant your turn. I was sitting in a daze because of the way they had drilled the other guy. He told me to tell them about my crime. I told them about the case from 1983. They asked me about another case and I told them I did not know anything because I was drunk. I was in a daze after they had talked to the other people. It hit me so. He told me that when I came back on Saturday to come back direct and consistent with the program or don't come back. I told Joe he was helping me and that I had learned a lot. I was not prepared to talk because of the way the other people in group had been drilled. I had asked my agent if he was going to put me in jail and he told me we would talk about it. I cannot read or write and I have to get help from other people in the group. I have not missed any days in the group

> but I do not feel that I have had any fair treatment in the group. I understand a few things in the group and I bought the book. I do not know what is going on in the book. I am not willing to go to treatment at RCI because I do not have a life on the street. I do not have nothing and I would rather go back to prison and die. I do not trust my agent and I would like a new agent. If I am going to get another chance I would like to do it with a new agent.

(Doc. 32-7, Ex. G.)

Davis's attorney, Jon Spansail, did not request a preliminary hearing. Two weeks after the agent filed the violation/revocation summary, the ALJ conducted a hearing. (Doc. 33-2, Ex. N.) A final revocation hearing notice was sent on March 11, 2006, alerting Davis to the May 11, 2006, hearing at 3 p.m.

At the outset of the May 11, 2006, revocation hearing, Davis's agent asked to submit a recording of the December 27, 2005, revocation hearing conducted before the Division of Hearings and Appeals. (*Id.*) Spansail requested additional time to review and object to the recording. The ALJ held the matter over for a status conference on May 26, 2006, at which time Spansail faxed a closing statement regarding the revocation. (Doc. 33-2, Ex. N.)

In the closing statement, Spansail asserted that Davis's parole should not be revoked because Davis had attempted to comply with the conditions of the ATR and SOT to the best of his abilities. (Doc. 33-1, Ex. M.) According to Spansail, Davis is "illiterate and suffering from mental illness, schizophrenia." (*Id.*) Spansail emphasized that the crimes were committed nearly 20 years before and that Davis had difficulty recalling the incidences. In addition, there was no testimony that Davis was advised of his rights and responsibilities in the SOT program. Finally, Spansail argued that with respect to allegation #2, Davis refused to sign a statement written for him which was not read to him. (*Id.*)

4

The ALJ issued his findings of fact and conclusions of law on June 8, 2006, revoking Davis's parole. (Doc. 33-2, Ex. N.) He cited the testimony of the agent, statements made to the agent, Davis's statement to the department, a letter from the treatment provider, the prior revocation hearing, Davis's "cavalier" attitude, and the need to impress upon Davis the seriousness of his conduct. The ALJ noted that the statement to the agent did not appear related to any treatable condition, and that Davis had refused an alternative. (*Id.*) Consequently, the ALJ ordered that Davis be incarcerated for a period of two years on the later case, and a period of ten years on his combined sentence without the ability to earn good time on his forfeiture. (*Id.*).

On September 4, 2008, Davis filed a letter with the ALJ asserting that he was deprived of his "due process rights to a final revocation hearing and Good time forfeiture based upon Atty. Jon Spansail ineffective assistance of counsel." (Doc. 33-3, Ex. O.) Davis identified the myriad of ways that he believed counsel was ineffective, including his failure to request a preliminary hearing and/or seek judicial review. (*Id.*) However, the ALJ refused to reopen the case or set aside the original order (Doc. 33-4, Ex. P).

Davis filed a letter with the Division of Hearing and Appeals on March 2, 2009, asking them to address his claims of ineffective assistance of counsel. (Doc. 33-5, Ex. Q.) David Schwarz, Administrator for the Division of Hearing and Appeals, reviewed Davis's letter and construed it as a request for reconsideration of the decision based on newly discovered evidence. (Doc. 33-6, Ex. R.) On April 6, 2009, Schwarz denied the same finding that Davis failed to come forward with any newly discovered evidence or any reason for a rehearing of the revocation. (*Id.*)

On May 21, 2009, the ALJ responded to Davis's letter requesting confirmation that Davis was not present for the telephonic status conference on May 26, 2006. (Doc. 33-7, Ex. S.) Although the ALJ did not recall if Davis requested to be present, he noted that the conference was held at Spansail's request so that Spansail would have a chance to listen to a recording of Davis's December 27, 2005, revocation hearing. He further noted that Davis was present at the December 27, 2005, hearing, and that no additional information was discussed at the May 26, 2006, conference. (Doc. 33-7, Ex. S.)

Davis filed a petition for writ of habeas corpus with the Wisconsin Supreme Court on June 3, 2009, raising all of his ineffective assistance of counsel claims. (Doc. 33-8, Ex. T.) The court ordered Spansail to address Davis's allegations that he abandoned Davis in failing to seek judicial review. (Doc. 33-9, Ex. U.) Attorney Spansail filed a response on August 31, 2009, stating as follows:

1. In a conversation between Grant Davis and Attorney Jon Spansail, that occurred at a date around June 21, 2006, Attorney Spansail discussed the revocation decision with Grant Davis. Mr. Grant Davis was informed that he received considerably less than the maximum and an appeal might not necessarily give him a better disposition.

2. Mr. Davis was informed by Attorney Spansail that administrative appeals are difficult to win and that generally the record is closed with no new evidence submitted. He was advised that many of his arguments were not meritorious. Mr. Davis had asserted that a fellow prisoner was advising him and was then told by Attorney Spansail that his fellow prisoners might not be the best advisors.

3. Mr. Grant Davis had said he was going to file on his own. He was advised against it, but that it is possible. He responded with words to the effect of: I gotta do what I gotta do. I'm done with you. You ain't doing shit for me.

4. Attorney Spansail took these words to mean that Mr. Davis did not want Attorney Spansail to further represent Mr. Davis. Attorney Spansail concluded that his representation of Grant Davis had been terminated by the client and that Mr. Davis may wish to proceed pro se. No further

6

> conversation occurred between Grant Davis and Attorney Spansail. Attorney Spansail therefore did not file an administrative appeal for Mr. Davis to review the revocation decision nor any further judicial review.
>
> 5. On a date well after June 22, 2006, Attorney Spansail received a letter dated November 13, 2006, allegedly from Grant Davis.
>
> 6. In said letter Grant Davis allegedly (as Mr. Davis claims to be illiterate, though he appeared to read items at the revocation hearing and at other times in Attorney Spansail's presence) was requesting a copy of his file, which, outside of an audio recording of a hearing which Grant Davis was present for, was previously provided prior to his final revocation hearing. The file materials were copied, including the audio recording, and were mailed to Mr. Davis.
>
> 7. Mr. Davis was not personally present with Attorney Spansail at the May 26, 2008, telephone status conference. To the best of Attorney Spansail's recollection there was no additional evidence or testimony taken at this telephonic status conference. Inmates are usually not produced for such similar matter in circuit court where no testimony or evidence is presented. Attorney Spansail did submit that day a written closing argument and a copy was mailed to the client.
>
> 8. Mr. Davis was not precluded from presenting an Alternative to Revocation (ATR) at the hearing.
>
> 9. Mr. Davis fell within the exception to the preliminary hearing requirement. DOC 331.04(2)(b) provides that a preliminary hearing need not be held if the client has given and signed a written statement which admits the violation. In the attached statement, Mr. Davis admits he caused himself to be terminated from SOT (Sex Offender Treatment), which is a component of allegation #1. This issue further became moot upon him having his final revocation hearing.

(Doc. 33-10, Ex. V.).

The Wisconsin Supreme Court denied Davis's petition for writ of habeas without discussion on November 4, 2009. (Doc. 33-11, Ex. W.) The order states:

> A petition for writ of habeas corpus having been filed on behalf of the petitioner, Grant Davis, and considered by this court;
> IT IS ORDERED that the petition for writ of habeas corpus is denied, *ex parte.*

(Doc. 33-11, Ex. W.)

Davis filed a habeas petition with this court on June 24, 2010. (Doc. 1.) The petition was denied without prejudice but the court allowed Davis to file an amended petition using the standard form. (Doc. 5.) He filed again on July 21, 2010, without the form. (Doc. 7.) The court sent the form and allowed Davis to file a second amended petition on August 20, 2010. (Docs. 8 and 9.)

The court screened the second amended petition and found two claims: (1) violation of Davis's Sixth Amendment confrontation rights when he was not present at the May 26, 2006, continuation of his revocation hearing; and (2) ineffective assistance by revocation hearing counsel. Davis alleged that counsel failed to: (1) demand a preliminary revocation hearing; (2) demand a separate good time forfeiture hearing; (3) object to his absence from the May 26, 2006, continued hearing; (4) demand a hearing for the alternative to revocation program; and (5) seek judicial review of the administrative decision. Counsel was appointed and briefed the issues on behalf of Davis.

This court will issue a writ of habeas corpus only if a petitioner's custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court adjudicated the petitioner's claim on the merits, the court will grant the requested relief only when the decision below is "contrary to, or involve[s] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or when the state court's analysis "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). In reviewing state court decisions that are entitled to deference under § 2254(d), this court is confined to evidence before the state court when it rendered its decision. *Cullen v.*

*Pinholster*, —— U.S. ——, 131 S. Ct. 1388, 1399, 179 L. Ed. 2d 557 (2011). And, in such a case, the court cannot augment the reasonableness review with evidence produced at a district court's evidentiary hearing. *Id.* Here, therefore, the first issue is whether the court owes deference to the state court decision on the ineffective assistance of counsel claims.

The parties agree that *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011), sets forth the appropriate standard. In *Harrington,* the Supreme Court held that where a state court's decision is unaccompanied by explanation in the form of a summary dismissal, § 2254(d) deference still applies because the decision is nevertheless "on the merits." *Id.* at 784. In such a case, a petitioner must meet his burden "by showing there was no reasonable basis for the state court to deny relief*." Id.* However, when a state court makes the basis for its decision clear, § 2254(d) deference applies only to those issues the state court explicitly addressed. *See Wiggins v. Smith*, 539 U.S. 510, 534, 123 S. Ct. 2527, 156 L. Ed.2d 471 (2003) ("In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis.").

In his petition to the Wisconsin Supreme Court Davis raised the same ineffective assistance of counsel issues that this court has asked the parties address: (1) that revocation counsel failed to request a preliminary hearing; and (2) that counsel abandoned Davis on appeal from the revocation decision.[1] The Wisconsin Supreme Court ordered

---

[1] All remaining claims are rejected on the merits. (Doc. 52.) The court found that the May 26, 2006, hearing was conducted for the sole purpose of allowing Spansail to listen to the recording of the prior December 2005 hearing and that Davis had been present at the December 2005 hearing. In addition, Davis had been offered and failed to complete the ATR program and Spansail requested consideration of ATR. Finally, the court cited Wis. Admin. Code HA 2.05(7)(e)(1) and 2.06(1), which provides that if the ALJ decides to revoke the offender's parole and the decision includes a determination of good time forfeited, a separate hearing is required only when the parolee waives his right to a final revocation hearing.

9

Spansail to respond to Davis's statement that Spansail abandoned him and failed to seek judicial review. Spansail then filed a response that addressed both issues.

Afterward, the Wisconsin Supreme Court rejected Davis's petition on the merits and without comment. Hence, the Wisconsin Supreme Court's decision precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision. *Harrington*, 131 S. Ct. at 785 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Nothing requires a state court to give reasons before its decision can be deemed "adjudicated on the merits." *Harrington,* 131 S. Ct. at 785

Viewing Davis's ineffective assistance of counsel claims through this deferential lens, the court cannot consider the testimony received during the evidentiary hearing in this habeas proceeding. The evidentiary hearing was scheduled after the Seventh Circuit Court of Appeals decided *Davis v. Humphries*, 747 F.3d 497, 498–99 (7th Cir. 2014). There, the Seventh Circuit held that mental incompetence may support equitable tolling of the 28 U.S.C. § 2244(d) limitations period and remanded the case to the district court "for a more nuanced evaluation of the petitioner's mental capabilities." *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014) ("Socha II ")(citing *Davis*, 747 F.3d at 498–99.) Because respondent stipulated to equitable tolling and withdrew the procedural default defense, the court in this case must turn back to the record before the Supreme Court, treating it with "deference and latitude." *Harrington*, 131 S Ct. at 785.

Without comment but after receiving Spansail's response, the Wisconsin Supreme Court denied Davis's petition. Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984), Davis had to establish: 1) his counsel's performance was objectively unreasonable or deficient; and 2) he suffered prejudice, meaning, but for his

unprofessional counsel's errors, he would have achieved a different result. *Id.* at 688, 694. With respect to the abandonment claim, there are two distinct factual scenarios under which an attorney's failure to file a notice of appeal for a client may give rise to a claim for ineffective assistance of counsel under *Strickland*. *Roe v. Flores–Ortega*, 528 U.S. 470, 476-77, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). First, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal" is per se deficient. *Id.* at 477, 120 S. Ct. at 1035 (emphasis added). Second, a lawyer who fails to consult with the defendant about an appeal may be deficient for not filing a notice of appeal in certain circumstances. *Id.* at 479-80, 120 S. Ct. at 1036.

Spansail informed the Wisconsin Supreme Court that Davis said he was going to file his own appeal and that Spansail concluded Davis terminated his representation. Indeed, Spansail wrote that "the client, Mr. Grant Davis expressed that he did not wish Attorney Jon Spansail to further represent him in the revocation matter. Grant Davis terminated the attorney-client relationship." This response provided a basis for the Supreme Court to conclude that Spansail consulted with Davis regarding an administrative appeal and determined that Davis intended to proceed on his own. That this court would have preferred additional inquiry based on Davis's known mental health issues, fairminded jurists could disagree on the correctness of the state court's decision, *Harrington*, 131 S. Ct. at 785. As such, habeas relief is not available on this claim.

Similarly, Davis's claim regarding counsel's failure to request a preliminary hearing fails even if the deferential standard of review did not apply. As to deficient performance, Spansail's response to the Wisconsin Supreme Court referenced Davis's attached, signed statement indicating that Davis "caused himself to be terminated from SOT (Sex Offender

11

Treatment), which is a component of allegation #1" and that the issue became moot upon the final revocation hearing. It is true that a preliminary hearing need not be held if the client gives a signed, written statement admitting the violation. DOC § 331.04(2)(b). While jurists could debate whether Davis understood the statement or admitted the violations, Davis cannot establish prejudice where he had a final revocation hearing and raised no colorable challenge to the fairness of that final hearing or its outcome.

The prejudice prong of *Strickland* requires that the petitioner show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Significantly, a preliminary hearing is not a determination of guilt but rather an inquiry into whether probable cause justifies the deprivation resulting from the detention until the time of the final decision. *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972). Davis has asserted that he did not have a full and fair final revocation hearing and that he did not have an opportunity to cross examine the witness, but the record belies his assertion. The ALJ conducted a final revocation hearing on May 11, 2006. At that time, the ALJ accepted exhibits proffered by the parties, heard testimony, and both parties—and the court—had the opportunity to question the agent. (Doc. 33-1, Ex. Y.) Davis testified on his own behalf, explaining that he has problems with his memory and that he had been diagnosed with schizophrenia at one point. Davis further admitted to the underlying convictions and offered his view of the alleged violations. Moreover, Spansail filed a closing statement which was followed by the ALJ's decision which was supported with findings based on the evidence. Hence, Davis's incarceration flowed from his valid revocation hearing rather than any failure to hold a preliminary hearing. *See United States v. Companion*, 545 F.2d

308, 312-313 (2d Cir.1976) (failure to hold a preliminary hearing was not prejudicial error where the defendant had been found to be in violation of probation following a revocation hearing); *see also Barton v. Malley,* 626 F.2d 151, 159 (10th Cir. 1980) (denying habeas relief for failure to conduct preliminary parole revocation hearing when final revocation hearing had been conducted); *Collins v. Turner*, 599 F.2d 657, 658 (5th Cir. 1979)(same, probation revocation).

As a final matter, Rule 11(a) of the Rules Governing § 2254 Cases provides that a district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant." A certificate of appealability "may be issued only if the prisoner has at least one substantial constitutional question for appeal." 28 U.S.C. § 2253(c)(2). Because Davis has not made a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability. Now, therefore,

IT IS ORDERED that Grant Davis's habeas petition is denied.

IT IS FURTHER ORDERED that this case is dismissed.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE